

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00194-CR

CYNTHIA TYLER                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Cynthia Tyler appeals from her conviction for possession of less than one gram of methamphetamine. After the trial court denied her motion to suppress, Appellant pleaded guilty pursuant to a plea agreement. She contends in one point on appeal that the trial court erred by denying her motion to

---

[1]*See* Tex. R. App. P. 47.4.

suppress because the search of her vehicle was illegal under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009). We affirm.

## II. BACKGROUND

Ashley Chrisman testified at the suppression hearing that, on August 23, 2009, she called 911 and reported that a Lexus was swerving in and out of traffic cones and had almost hit her as she drove westbound on Loop 820. She stated that she believed that the driver was drunk. Chrisman continued following the Lexus and witnessed it hit the side of a bridge. When she approached the Lexus to make sure the driver was not injured, Chrisman noticed that the driver, whom she identified in open court as Appellant, slurred her words and sounded drunk. Chrisman testified that the police arrived approximately five to ten minutes later.

Fort Worth Police Officer William Margolis testified that he made the initial contact with Appellant and asked for her license. He then requested that she get out of the car. Officer Margolis testified that he noticed that Appellant had a slightly staggered walk and unsteady balance and that her speech became more and more slurred over time. He also testified that he believed Appellant was under the influence of something other than alcohol. He asked Appellant if she was on any prescription medications, and Appellant said that she was not. Based on these observations, Officer Margolis decided to call in a DWI enforcement officer.

Officer Jason Moss responded to Officer Margolis's call. He is an officer with the Fort Worth Police Department DWI enforcement unit and has more than

2

eleven years' experience as a peace officer. When he arrived, Appellant was seated in the front passenger seat of her vehicle. At the suppression hearing, Officer Moss testified that his initial observation was that Appellant's speech was slurred as if her tongue were swollen. He asked Appellant whether she had been drinking, and Appellant responded that she did not drink. He then asked Appellant if she had taken any drugs or prescription medication, and she replied that she had taken her prescription for Xanax. Officer Moss asked Appellant to exit the vehicle so that he could administer the horizontal gaze nystagmus (HGN) test, which tests for the presence of alcohol, depressants, PCP, or inhalants in the body. He observed that when she exited the vehicle, Appellant had difficulty walking; she stumbled and needed to brace herself on the car in order to maintain her balance. In addition, her pupils appeared to be highly constricted.

Officer Moss testified that the HGN test exhibited no clues, which indicated to him, in combination with Appellant's slurred speech and unsteady balance, that she was under the influence of a stimulant such as cocaine or methamphetamines. He arrested Appellant for driving while intoxicated and placed her in the back of his patrol car. He thereafter searched her purse, which was in the passenger seat of the Lexus and easily accessible to Appellant while she was driving and where she was seated when he arrived on the scene. Officer Moss testified that he performed this search "looking for evidence of her – maybe Xanax in her purse and any other evidence that [he] might see that – to

back up [his] investigation." In the purse, he found a baggie containing a substance that later tested positive for methamphetamine.

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those

questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave

the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## IV. ANALYSIS

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically

6

defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862.

Once an officer has probable cause to arrest, he may search a vehicle incident to a recent occupant's arrest in two circumstances. *Gant*, 556 U.S. at—, 129 S. Ct. at 1723. The first of these arises when the arrestee is unsecured within reaching distance of the passenger compartment of the vehicle at the time of the search. *Id.* This exception does not apply in this case because Appellant was seated in the back of Officer Moss's patrol car at the time of the search.

Officers are also justified in conducting a warrantless search pursuant to arrest when it is reasonable to believe that the vehicle contains evidence of the offense of arrest. *Id.* at ——, 129 S. Ct. at 1719 (citing *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137 (2004) (Scalia, J., concurring in judgment)). Discussing this exception in *Gant*, the Court stated,

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id.* (citations omitted) (referencing *New York v. Belton*, 453 U.S. 454, 456, 101 S. Ct. 2860, 2862 (1981) (defendant arrested for unlawful possession of marijuana), and *Thornton*, 541 U.S. at 618, 124 S. Ct. at 2129 (defendant arrested for possession of marijuana and crack cocaine)). In his concurring opinion in

7

*Thornton*, on which the *Gant* Court relied for this exception, Justice Scalia wrote, "[I]t is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended." *Thornton,* 541 U.S. at 630, 124 S. Ct. at 2136. Specifically, the *Gant* Court held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 U.S. at ——, 129 S. Ct. at 1719 (quoting *Thornton*, 541 U.S. at 632, 124 S. Ct. at 2137 (Scalia, J., concurring in judgment)). When it is reasonable to believe that evidence of the offense of arrest may be found in the vehicle, the officer may search "the passenger compartment of [the] arrestee's vehicle and any containers therein." *Id*.

Because Appellant was arrested for DWI, we must determine whether it was reasonable for Officer Moss to believe he might find evidence of Appellant's offense in her vehicle. At least one court has suggested after *Gant* that certain offenses establish the reasonableness of a warrantless search incident to arrest of an automobile. *See United States v. Oliva*, No. C-09-341, 2009 WL 1918458, at *6 (S.D. Tex. Jul. 1, 2009) (suggesting that it is per se reasonable for an officer to search the vehicle for evidence of the crime of arrest when defendant is arrested for DWI). Common knowledge also suggests that either a Xanax prescription or a sufficient amount of stimulants could have been concealed in Appellant's purse because Texas courts routinely decide cases in which a controlled substance is discovered in an individual's purse following an officer's

8

observation that the individual is intoxicated. *See, e.g., Ashton v. State*, 931 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (intoxicated arrestee's purse contained cocaine); *see also Broadus v. State*, No. 03-03-00189-CR, 2004 WL 34879, at *1 (Tex. App.—Austin 2004, no pet.) (mem. op., not designated for publication) (intoxicated arrestee's purse contained cocaine and drug paraphernalia); *Weaver v. State*, No. 05-03-00225-CR, 2003 WL 22462575, at *1 (Tex. App.—Dallas 2003, no pet.) (not designated for publication) (DWI arrestee's purse contained a pouch with drug paraphernalia and marijuana); *Diaz v. State*, No. 05-98-01936-CR, 1999 WL 711089, at *1, 2 (Tex. App.—Dallas 1999, no pet.) (DWI arrestee's purse contained marijuana). Indeed, the trial judge observed at the hearing that "it is absolutely common experience [that p]eople who use drugs and drive have drugs in the car."

In the instant case, testimony at the suppression hearing established that Appellant (1) was driving erratically; (2) was involved in a single-car accident in which she struck a bridge; (3) had slightly slurred speech that became steadily more slurred; (4) had a slightly staggered walk and had difficulty maintaining her balance; (5) had initially denied using prescription medication but later admitted taking Xanax; (6) had highly constricted pupils; (7) exhibited no clues on the HGN test, indicating that she was under the influence of a stimulant; and (8) denied drinking. Based on the totality of the circumstances, we hold that it was reasonable for Officer Moss to believe that a search of Appellant's vehicle and the containers therein might yield evidence of Appellant's driving while

9

intoxicated and that the trial court did not err by denying Appellant's motion to suppress. We overrule Appellant's sole point.

## V. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 4, 2011